IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MIREILLE M. LEE,                    )
                                    )
        Plaintiff,                  )
                                    )          NO. 3:20-cv-00924
v.                                  )          JUDGE RICHARDSON
                                    )
THE VANDERBILT UNIVERSITY,          )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

Pending before the Court is a Motion to Dismiss the First Amended Complaint[1] filed by Defendant. (Doc. No. 37, "Motion"). An unredacted, sealed version of the Memorandum in Support of the Motion was filed at Docket No. 36, and a redacted version was filed at Docket No. 38. Plaintiff filed an unredacted, sealed Response at Docket No. 51, and a redacted version was filed at Docket Number 47. Defendant filed a Reply at Docket No. 54, with an appendix filed under seal at Docket No. 57.[2] The parties also filed supplemental briefing after Plaintiff added a single paragraph to the Second Amended Complaint (Doc. No. 104), as discussed in more detail below.[3]

Plaintiff also filed a Motion to Strike Portions of Defendant's Memorandum in Support of its Motion to Dismiss (Doc. No. 81, "Motion to Strike") along with a Memorandum in Support of

---

[1] Though Plaintiff later filed a Second Amended Complaint (Doc. Nos. 104, 160), as described below Doc. No. 37 remains the operative Motion to Dismiss.

[2] The Court herein will reference and cite to the sealed version of the documents, but the cited page number would be the same were the Court to cite the unsealed version of the documents.

[3] This briefing comprises Defendant's initial supplemental brief (Doc. No. 107), Plaintiff's response to that supplemental brief (Doc. No. 114), and Defendant's reply to Plaintiff's response (Doc. No. 116).

the Motion to Strike (Doc. No. 83). Defendant responded. (Doc. No. 89). Plaintiff thereafter replied. (Doc. No. 91).

For the reasons discussed herein, the Motion will be granted.

## FACTUAL BACKGROUND[4]

Plaintiff, a female, was hired by Defendant in 2008 as an Assistant Professor in the Department of History of Art, with a secondary appointment in Classical and Mediterranean Studies. (Doc. No. 160 at ¶ 9). Plaintiff was a "spousal hire," meaning that Plaintiff was hired as an accommodation to retain her husband. (*Id.* at ¶ 13). A spousal hire can be either a male or female individual. (*Id.*).

Plaintiff alleges that male spousal hires on the tenure track are almost always granted a promotion to associate professor with tenure, but female spousal hires are rarely granted the same promotion. (*Id.* at ¶ 14). To support this assertion, Plaintiff provides a chart indicating that five unnamed females were denied tenure, and one was awarded tenure. (*Id.* at ¶ 15). In a comparison chart, two unnamed males were denied tenure, while eight were awarded tenure. (*Id.*). The charts are as follows:

| Female Spousal Hires | |
|---|---|
| **Denied Tenure** | **Awarded Tenure** |
| Female 1 | Female 6 |
| Female 2 | |
| Female 3 | |
| Female 4 | |
| Female 5 | |

---

[4] Portions of the Complaint were redacted at Defendant's request. These paragraphs were attached to the Response to the Motion to Dismiss. The Court will cite to these paragraphs as though they appear in the Complaint, though they are found elsewhere in the record. (Doc. No. 51 at 28–29). A sealed version of the First Amended Complaint, with the paragraphs unredacted, is filed under seal at Docket No. 66.

| Male Spousal Hires | |
| --- | --- |
| **Denied Tenure** | **Awarded Tenure** |
| Male 1 | Male 3 |
| Male 2 | Male 4 |
| | Male 5 |
| | Male 6 |
| | Male 7 |
| | Male 8 |
| | Male 9 |
| | Male 10 |

Plaintiff first applied for a promotion to associate professor with tenure in 2015. (*Id.* at ¶ 16). Her department voted unanimously to recommend her for a promotion and tenure, each professor from another university who was consulted also recommended she be granted the promotion, and the Dean of College of Arts and Science recommended that she be promoted. (*Id.*).

Plaintiff was denied the promotion, allegedly as a result of false and fraudulent misrepresentations made to the Provost and the Promotion and Tenure Review Committee ("PTRC") by agents and officers of Defendant. (*Id.* at ¶ 17). At this same time, a female colleague in the department (who was not a spousal hire) received a promotion and tenure (despite Plaintiff believing herself to have been more qualified). (*Id.* at ¶ 18). Plaintiff believes that her file presented a stronger application for tenure than this female colleague. (*Id.*).

Around July 13, 2016, Plaintiff filed a Grievance directed at Kevin Murphy, Chair of the Department of History of Art; Susan Wente, Provost and Vice Chancellor for Academic Affairs; and the PTRC. (*Id.* at ¶ 19). The Grievance asserted that Plaintiff was discriminated against when her application was denied, and included a claim that she was discriminated against as a female spousal hire. (*Id.* at ¶ 20). Plaintiff produced evidence that she had been denied a tenure-clock extension, which was typically granted to tenure-track employees who had children or suffered

serious health problems prior to being reviewed for tenure and promotion. (*Id.* at ¶ 21). Plaintiff had both become a parent and suffered major health issues during the relevant period. (*Id.*). The Committee reviewing the Grievance found that it had merit, and it recommended that Plaintiff be reviewed again for tenure during the 2018-2019 academic year and given an additional year of employment on her contract with Defendant. (*Id.* at ¶ 22). This recommendation was adopted by the Chancellor, without the making of specific findings against the individuals who were the subjects of the Grievance. (*Id.* at ¶ 23).

Shortly thereafter, in August 2017, Plaintiff and Murphy (who had been a subject of the Grievance) were having a meeting when Murphy raised his voice and berated Plaintiff for the statements made in the Grievance. (*Id.* at ¶ 24). Plaintiff reported the conversation. (*Id.*). Murphy assigned Plaintiff additional duties, allegedly to interfere with her ability to complete her research and receive tenure. (*Id.*). In September, Plaintiff attempted to transfer departments due to resentment against her, but her request was denied. (*Id.* at ¶ 25).

In 2018, Plaintiff Lee submitted another application for tenure and promotion with unanimous recommendations from external reviewers. (*Id.* at ¶ 30). Dean Greer (who had supervised the PTRC in 2016 and previously worked for Wente) explained the denial in a way that violated Defendant's own policies and relied upon false and misleading information. (*Id.* at ¶¶ 26, 29, 30).

## PROCEDURAL HISTORY

Based on these circumstances, Plaintiff filed a state-court action against Defendant in the Chancery Court of Davidson County, Tennessee. In an order dated March 27, 2020, Chancellor Perkins denied a motion to dismiss that had been filed by Defendant. (Doc. No. 47-1, "Chancery Court Order"). Plaintiff then voluntarily dismissed that state court action and filed the instant

action in this Court on October 28, 2020. (Doc. No. 1). Thereafter, Plaintiff filed her First Amended Complaint—filed unsealed and in redacted form at Docket No. 25 and in sealed and unredacted form at Docket No. 66. Defendant then filed the instant Motion (Doc. No. 37), as well as the Memorandum in Support thereof (Doc. Nos. 36, 38), seeking to dismiss the First Amended Complaint.

Plaintiff thereafter moved for leave to file a Second Amended Complaint that would vary from the First Amended Complaint only in that it added the following paragraph, numbered 15A in the Second Amended Complaint:

> In addition to the intentional discrimination alleged in Paragraphs 14 and 15 of the Complaint, Defendant Vanderbilt has also, on information and belief, intentionally discriminated against female assistant professors on the tenure track by terminating the employment of such females who are denied tenure after a terminal year of employment while transferring male tenure track assistant professors who are denied tenure to non-tenure track employment positions and continuing their employment beyond the terminal year. Plaintiff has not been transferred to a non-tenure track position but instead Defendant Vanderbilt has terminated her employment subjecting her to intentional gender discrimination and retaliation for her protected activity. Plaintiff has been injured by the foregoing intentional gender discrimination and retaliation.

(Doc. Nos. 79, 79-1 at 1). The Court thereafter granted Plaintiff such leave. (Doc. No. 96). Having indicated to the Court that its proposed Second Amended Complaint would do nothing more than add this additional paragraph, Plaintiff thereafter filed (in sealed and unredacted form at Docket No. 160 and in unsealed and redacted form at Doc. No. 104) a Second Amended Complaint that went beyond such a change; rather shamelessly, Plaintiff improperly took the opportunity to make some other changes (albeit mostly of essentially a merely cosmetic nature) to the First Amended Complaint, as Defendant's comparison of those two amended complaints shows. (Doc. No. 107-

1). But with one notable exception, [5] the Second Amended Complaint was essentially identical to

the First Amended Complaint except insofar as it added paragraph 15A. Accordingly, Defendant

requested that the Court consider the Motion, originally filed with respect to the First Amended

Complaint, to be applied to the Second Amended Complaint and for the parties to have an

opportunity to file supplemental briefing with respect to solely to the effect of paragraph 15A.

(Doc. No. 97). The Court acceded to that request. (Doc. No. 101). Thereafter, however, the parties

jointly moved to strike Paragraph 15A of the Second Amended Complaint. (Doc. 237 at 1). The

Motion to Strike was granted. (Doc. No. 242). The Court will thus proceed in ruling on the

Motion to Dismiss with Paragraph 15A of the Second Amended Complaint stricken and the

Court will

---

[5] Defendant identifies one non-cosmetic unauthorized change made by Plaintiff in the Second Amended Complaint, accurately stating that "where Plaintiff stated in the First Amended Complaint that '[t]he relevant portion of [Vanderbilt's Faculty Manual] is attached to this Amended Complaint as Exhibit A' (ECF No. 25 at ¶ 52), although the First Amended Complaint did not include any Exhibit A, the Complaint now states that 'the Faculty Manual, Part 2, is incorporated by reference here as though set forth herein in full detail.' ECF No. 104 at ¶ 53." (Doc. No. 107 at 5 n.3). (By its citation to "ECF No. 104 at ¶ 53" Defendant appears to have inadvertently identified this relevant paragraph as Paragraph 53 in the Second Amended Complaint, when actually Paragraph 52 of the Second Amended Complaint clearly is the paragraph number that Defendant intended to reference). The Court will disregard this unauthorized change and will consider Paragraph 52 of the Second Amended Complaint to read as paragraph 52 was written in the First Amended Complaint; in other words, the Court does not treat "the Faculty Manual, Part 2" as incorporated into the Second Amended Complaint by reference (even if so doing were otherwise appropriate when no such manual was attached).

The Second Amended Complaint contains other references to the "Faculty Manual, Part 2," albeit by using the term "Faculty Manual" without reference to "Part 2" in particular. These references are contained in paragraphs 54, 57 and 59, and are identical to the references to the manual contained in the same paragraphs of the First Amended Complaint, and so the Court will consider these other references to the manual. But any reference to the manual must be considered on (and circumscribed by) its own terms, and not as a reference to the manual in light of whatever Plaintiff might wish to claim was incorporated into such reference via Plaintiff's (attempted but failed) effort to incorporate the entire contents of the manual into the Second Amended Complaint.

disregard this paragraph in so ruling. The Second Amended Complaint will remain the operative complaint for purposes of ruling on the Motion,[6] however, and the Court will consider the parties' above-described supplemental briefing related to the Second Amended Complaint only insofar as that briefing relates to any issues unrelated to Paragraph 15A.

The Complaint brings claims for discrimination and retaliation (Counts I and II),[7] violations of the Tennessee Human Rights Act ("THRA")[8] (Counts III and IV), and breach of contract (Counts V and VI).[9] (Doc. No. 160).

---

[6] Therefore, when the Court uses the term "Complaint" throughout this opinion without any specific indication that the intended reference is to the original Complaint in particular, to the First Amended Complaint in particular, or to the Second Amended Complaint in particular, the Court is referring to the Second Amended Complaint in particular (as this is the operative complaint for purposes of the Motion).

[7] The Complaint states that these counts are based upon "violation of federal law," but do not name a particular (federal) statute under which they are brought. (Doc. No. 160 at ¶ 34). Earlier in the Complaint, Plaintiff indicates that the action arises under "Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §2000e et seq. (as amended), 42 U.S.C. §2000e-2 (as amended) and the Civil Rights Act of 1991, 42 U.S.C. §1981a." (*Id.* at ¶ 3).

[8] The THRA provides a state remedy for race discrimination. The statute states "[i]t is a discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . " Tenn. Code Ann. § 4-21-401(a)(1). Though this is a state discrimination law, courts apply the same principles as they would to a claim brought under Title VII or 42 U.S.C. § 1981. *See e.g.*, *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) ("The stated purpose and intent of the Tennessee Act is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. Accordingly, our analysis of the issues in this appeal is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act." (internal citations omitted)). It is true that the THRA is broader than Title VII in some respects, *Walton v. Interstate Warehousing, Inc.*, No. 3:17-cv-1324, 2020 WL 1640440, at *5 (M.D. Tenn. Apr. 2, 2020), but not any that are relevant to the analysis in this case.

[9] Count VII was dismissed on February 7, 2022 upon joint motion of the parties. (Doc. No. 164).

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or

"bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

Importantly, and as further discussed below, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.[10]

---

[10] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

A plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a prima facie case for purposes of *McDonnell Douglas*. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). The Court recently explained this in some detail in resolving a motion to dismiss a plaintiff's THRA claims:

> But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).
>
> This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on

this Motion, and Plaintiff is not required here to make out a prima facie case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

*Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020) (Richardson, J.). So as noted in *Keys*, *McDonnell Douglas* ultimately may not apply at all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with). And even if *McDonnell Douglas* would apply at later stages of the case, it cannot sensibly be applied at the pleading stage, and so its requirement of a showing of a *prima facie* case must not be applied at the pleadings stage.

## DISCUSSION

The Court will first discuss what evidence it can consider in resolving the present Motion. Thereafter, the Court will address Plaintiff's Motion to Strike. The Court will then consider whether this Motion is properly brought and whether the law of the case doctrine applies. Next, the Court will determine whether Plaintiff has plausibly stated a claim for relief on her discrimination and retaliation claims. The Court will then address Plaintiff's breach of contract claims. Finally, the Court will briefly address Plaintiff's request for sanctions.

A. Evidence

       1. *Documents*

Plaintiff attaches to her Response several documents. The first document is the state court's ruling on the motion to dismiss filed in state court. (Doc. No. 47-1; Doc. No. 51 at 15–24). The second document is a series of emails between counsel in this case. (Doc. No. 47-2; Doc. No. 51 at 25–27). The final document (Doc. No. 51 at 28–29) comprises a printout of the paragraphs that were redacted from the Complaint, which the Court treats as serving merely to call to the Court's

attention the sealed paragraphs of the First Amended Complaint, which was filed both not under seal and with those paragraphs redacted (Doc. No. 25) and also under seal without any redactions (Doc. No. 66).[11]

Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss,

---

[11] Plaintiff filed her Response both under seal and without redactions (Doc. No. 51, "sealed Response") and not under seal and with redactions (Doc. 47, "redacted Response"). When filing her unredacted Response, Plaintiff filed the two supporting exhibits separately (as Doc Nos. 47-1 and 47-2). When filing the sealed Response, Plaintiff did not file the two supporting exhibits separately, but rather included them as part of the same PDF document that contains the sealed Response. This sealed Response also contains a third exhibit not filed with the unredacted Response: the printout of two paragraphs (numbered 27 and 32) in the sealed and unredacted version of the First Amended Complaint (Doc. No. 66) that were placed and remain under seal at Defendant's request and thus are redacted from the unsealed and redacted version of the First Amended Complaint. These paragraphs likewise are found in the sealed and unredacted version of the Second Amended Complaint (Doc. No. 160) but redacted from the unsealed and redacted version of the Second Amended Complaint (Doc. No. 104).

but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

Regarding the first document, the state court's ruling on the Chancery Court Order, the Court finds that it can consider this document without treating the Motion as one for summary judgment, as this document is in the public record. *Bassett*, 528 F.3d at 430.[12] The Court also has no concerns about considering the paragraphs (numbered 27 and 32) that were redacted from the unsealed version of the First Amended Complaint (and for that matter, the Second Amended Complaint) as those paragraphs appear elsewhere (in the sealed, unredacted versions of the First Amended Complaint and Second Amended Complaint at Docket Nos. 66 and 160, respectively, as discussed above) as allegations of record in this case. *Id.* However, the Court cannot consider the emails between counsel in this case. The emails contain discussions between counsel regarding the filing of the First Amended Complaint and the production of the relevant copy of the contract referenced in the First Amended Complaint.[13] These emails are not referenced in or integral to the First Amended Complaint or Second Amended Complaint. Therefore, the Court will not consider these emails in ruling on the Motion.

---

[12] To the extent that it does consider the state court's ruling, the Court considers only *what was stated* in the ruling, without accepting any such statements for the truth of what was stated. In other words, the Court will consider the ruling for what the ruling said, to the extent that what was said is of independent significance irrespective of whether what was said was true. But the Court will not consider what was said in the ruling for the purpose of proving the truth of what was said in the ruling, as considering what was said for that purpose would run afoul of the rule against hearsay.

[13] Above, the Court has described the emails because it believes that understanding their substance is necessary to understand why the Court does not find them integral to the First Amended Complaint. The Court wishes to emphasize that its demonstrated familiarity with the email chain does not mean that the Court will have it in the back of its mind when deciding the instant Motion; rather, the Court is disregarding it entirely, in all respects, at this stage.

2. *Statements not in the Amended Complaints*

Additionally, Defendant asserts in its Reply that Plaintiff has relied upon facts in its Response that do not appear in the First (or Second) Amended Complaint. Defendant has attached a sealed appendix to its Reply listing the facts that appear in the Response but not in the First (or Second) Amended Complaint. (Doc. No. 57 at 1).[14]

When ruling on a motion to dismiss, the Court cannot consider facts that are contained only in briefing, and not the operative complaint. *E.g.*, *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("If the district court simply took the defendants' assertion in their motion to dismiss as true in stating that a plea agreement had been reached regarding the charges made against [Plaintiff], then it both mischaracterized the plaintiff's complaint and improperly looked outside the complaint in deciding a case on Rule 12(b)(6) grounds."); *Nichols v. Wayne Cty., Michigan*, 822 F. App'x 445, 447 (6th Cir. 2020) ("[B]ecause these facts do not appear in the complaint, we do not consider them at the motion to dismiss stage."); *Stewart v. S. Health Partners*, No. 1:10-0032, 2010 WL 4627829, at *2 (M.D. Tenn. Nov. 4, 2010), ("In considering a Motion to Dismiss, a Court should generally consider only the factual allegations set forth in plaintiff's Complaint, and not factual allegations set forth in a response to the Motion."), *report and recommendation adopted*, No. CIV. 1:10-0032, 2010 WL 5279908 (M.D. Tenn. Dec. 17, 2010).

The Court therefore will disregard statements of alleged fact that appear only in Plaintiff's Response. Though many of these alleged facts are not helpful anyway to the legal analysis below, and are instead just extraneous details, the Court specifically notes that it cannot consider the following particular alleged fact that (if it could be considered) would be relevant to the "similarly situated" analysis set forth below: "[o]ne of the bases on which Plaintiff Lee was denied tenure

---

[14] The Court notes that these facts also are missing from the Second Amended Complaint.

was the number of articles she had published in peer reviewed journals" while "[o]ne of the male comparators awarded tenure had no articles published in peer reviewed journals while Plaintiff Lee had four or more." (Doc. No. 51 at 6). The Court also cannot consider the additional alleged facts regarding Dean Geer and his role in the committee and tenure decision. (Doc. No. 51 at 4).

In sum, the Court finds that it can consider the previous motion to dismiss opinion from the state court and the paragraphs that were redacted from the Amended Complaints. The Court finds that it cannot consider the emails between counsel or factual statements that appear in the Response but not in the Amended Complaints.

B. Motion to Strike

Plaintiff's Motion to Strike seeks to exclude the "portion of [Defendant's] Memorandum [in support of the Motion to Dismiss] [that] raises the argument that the Amended Complaint should be dismissed on the ground that it fails to allege that the comparators identified in Paragraph 15 of the Amended Complaint are similarly situated in all relevant respects to [Plaintiff]." (Doc. No. 81 at 1). Plaintiff argues that this portion of the Memorandum (found on pages 8 through 11 of Docket No. 36) should be stricken because (according to Plaintiff) Defendant has declined to provide during the discovery process evidence related to Defendant's defense of the alleged lack of similarity of the comparators' situations. (*Id.*). Specifically, Plaintiff argues that Defendant "refused" to provide the tenure files of alleged comparators "on the ground that the information sought was irrelevant to the claims and defenses in the action." (Doc. No. 83 at 2). Plaintiff proceeds to argue that Defendant's refusal on this particular basis constituted "an effort by defendant Vanderbilt and its new Chicago counsel to lay a subtle trap for plaintiff Lee by lulling Lee into a false sense of security that this issue was no longer contested so that when defendant Vanderbilt filed its Motion for Summary Judgment, including this issue plaintiff would lack the

evidence with which to respond." (*Id.*).[15] Therefore, Plaintiff argues that Defendant's defense regarding similarly-situated comparators has been waived. (*Id.*).

In response, Defendant argues that the Motion to Strike should be denied because: "(1) Plaintiff failed to follow multiple federal and local rules, making the Motion to Strike improper and premature; (2) there is no reason to strike portions of Vanderbilt's Rule 12(b)(6) motion to dismiss on the basis of a purported discovery dispute; and (3) Plaintiff relies on mistaken assumptions to support her Motion to Strike." (Doc. No. 89 at 2). Defendant asserts that Plaintiff did not confer with Defendant regarding its relevant discovery response prior to filing the motion in violation of Local Rule 7.01(a)(1), Fed. R. Civ. P 37(a), and the Case Management Order. (*Id.* at 4–5). Further, Defendant argues that Plaintiff failed to raise this discovery dispute with the Magistrate Judge via a discovery-related motion, such as a motion to compel. (*Id.* at 5).

These failures to comply with the Local Rules, the Case Management Order (Doc. No. 77 at 6), and the Federal Rules of Civil Procedure alone are enough for the Court to deny the Motion to Strike, and the Court need not address the possible merits of the underlying discovery dispute. Should Plaintiff wish to pursue this issue via the appropriate processes for addressing a discovery dispute, Plaintiff is free to do so. At this time, however, the premature and inappropriate Motion to Strike will be denied, and the Court will consider Defendant's Memorandum in Support of the Motion to Dismiss in full without striking the requested pages.

---

[15] One might suspect that Plaintiff was insinuating something by identifying "Chicago" counsel as the sly culprits supposedly pulling a fast one on Plaintiff. One reasonably might speculate that the insinuation was to the effect that the situation involved a pack of city slickers reaching into their bag of tricks in an effort to take advantage of someone they perceived as a naïve Tennessee yokel. But the Court will resist the temptation to speculate and instead will merely note that the home base of Defendant's counsel is not probative of any relevant point here.

C. Law-of-the-case doctrine

Plaintiff argues that the Court should deny the Motion on the basis of the law-of-the-case doctrine. (Doc. No. 51 at 2). Plaintiff asserts that because in the previous state court proceeding (which was nonsuited) the state court judge denied a motion to dismiss, this Court cannot consider a successive motion to dismiss. (*Id.* at 2). Defendant argues that the law-of-the-case doctrine is inapplicable to this case. (Doc. No. 54 at 2–3).

The Sixth Circuit has previously explained:

> [The law of the case doctrine] states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Because of the possibility of forcing a transferred case into perpetual litigation by playing "jurisdictional ping-pong," the law of the case doctrine applies "with even greater force to transfer decisions than to decisions of substantive law." *Christianson v. Colt,* 486 U.S. 800, 816, 108 S. Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Nevertheless, the law of the case doctrine is a rule of judicial comity rather than one of jurisdictional limitation:
>
> > A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe [to] do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice." *Arizona v. California, supra,* 460 U.S., at 618, n. 8, 103 S. Ct., at 1391, n. 8 (citation omitted).
>
> *Christianson v. Colt,* supra, 486 U.S. at 817, 108 S. Ct. at 2178. In clarifying the circumstances under which a judge rightfully departs from the law of the case, Judge Friendly wrote in *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S. Ct. 65, 74 L.Ed.2d 66 (1982), "The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Id.* 668 F.2d at 109. Consequently, law of the case does not limit a court's power to make an independent decision; rather it "directs a court's discretion." *Arizona v. California,* supra, 460 U.S. at 618, 103 S. Ct. at 1391; accord *Skil Corp. v. Millers Falls Co.,* 541 F.2d 554, 558–59 (6th Cir.), *cert. denied,* 429 U.S. 1029, 97 S. Ct. 653, 50 L.Ed.2d 631 (1976).

*Moses v. Bus. Card Exp., Inc.,* 929 F.2d 1131, 1137 (6th Cir. 1991).

Typically, the law-of-the-case doctrine is confined to matters within the same litigation and is usually employed only once a case has been transferred from one federal court to another. *See Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) ("Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."); *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case.") (quoting *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 905 (6th Cir. 1996)). Neither party has pointed the Court to any case law addressing the applicability of the law-of-the-case doctrine in similar circumstances, where the prior examination of the relevant issue was by a state court in a case, nonsuited after such examination, based on facts similar to the pending federal case.

The Court believes that the law-of-the-case doctrine does not apply in any event, for several reasons. First, this lawsuit is separate from the state-court lawsuit. This case was not removed to this Court, and instead was an entirely new lawsuit filed in the federal court system. *Compare Pac. Emps. Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002) ("The doctrine also has relevance to rulings made by state courts prior to removal."). Second, the previous motion to dismiss was decided under state law rules and pleading standards, which are different from the federal rules and standards even if they have some similarities. Finally, there is case law indicating that the law-of-the-case doctrine does not apply to orders regarding motions to dismiss. *Wilson v. Buckeye Steel Castings Co.*, No. 2:99-CV-1300, 2001 WL 1681130, at *4 (S.D. Ohio Sept. 25, 2001) ("[O]rders pertaining to motions to dismiss do not constitute the law of the case.") (citing *Farmer v. Rountree*, 252 F.2d 490, 491 (6th Cir. 1958)). Therefore, the law-of-the case doctrine does not apply here, and the Court will consider the Motion on the merits.

Thus, for the reasons discussed, the Court finds that it can consider this Motion, and that the law-of-the-case doctrine does not apply.

## D. Gender discrimination

Plaintiff claims (in Counts I–IV) that she was discriminated against on account of her gender when she was denied a promotion and tenure status. (Doc. No. 160 at 10). Defendant argues that 1) there is no nexus between Plaintiff's tenure denial and her gender, and 2) Plaintiff has not pointed to a similarly-situated individual. (Doc. No. 38). The Court need reach only the first of these two issues to find that Plaintiff has failed to plausibly allege gender discrimination.

At the outset, the Court notes that many of the cases cited in Defendant's briefing arise in the context of a summary judgment motion, not a motion to dismiss. In employment discrimination cases, the *McDonnell Douglas* framework dictates that for a plaintiff to survive a motion for summary judgment based on indirect evidence: 1) (if the defendant meets its initial burden under Rule 56 as the movant), the plaintiff must show that he or should could establish his or her indirect-evidence *prima facie* case at trial, and then 2) (if the defendant meets its resulting burden to produce evidence of a legitimate, non-discriminatory reason), the burden shifts back to the plaintiff to show that the reason offered by the defendant is pretextual. *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). But since this Motion is a motion to dismiss, and not a motion for summary judgment, Plaintiff is not required to present evidence—or even alleged facts— sufficient to establish the elements of an indirect-evidence *prima facie* case under *McDonnell Douglas. Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a *prima facie* case can vary depending on the

context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted). In short, since a plaintiff may have direct evidence of discrimination that obviates the need for her ever to prove an indirect-evidence case, it makes no sense to require her to plead an indirect-evidence case.

This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant, if necessary, may attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a *prima facie* case as required by *McDonnell Douglas* on a motion for summary judgment; instead, Plaintiff need only satisfy the plausibility requirement for a motion to dismiss.

Discussing the plausibility requirement, *Keys* noted:

[T]he Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims . . . Thus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. 1937, that [Defendant] "discriminate[d] against [Keys] with respect to [her] compensation,

terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." . . . According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

684 F.3d at 610 (some internal citations omitted).

In *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015), for example, the Sixth Circuit found that the plaintiff had alleged facts sufficient to state a plausible claim and thus survive a motion to dismiss where the plaintiff made non-conclusory allegations establishing 1) membership in the protected class, 2) specific adverse employment actions taken against the plaintiff, and 3) instances in which the plaintiff was treated less favorably than others not in the protected class. *Id.* at 461 (discussing *Swierkiewicz* and *Keys*). Thus, a plaintiff will survive a motion to dismiss where a court is able to draw a "reasonable inference of discrimination" from the specific facts alleged (thus rendering the complaint sufficient to "give rise to reasonably founded hope that the discovery process will reveal relevant evidence to support [the plaintiff's] claims.").[16] *Id.* (internal citations

---

[16] The Second Circuit has adopted a lesser standard:

> [A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Sixth Circuit has indicated that this standard is not harmonious with the analysis in *Keys* and that it should not be used in this Circuit. *Doe v. Miami Univ.*, 882 F.3d 579, 588–89 (6th Cir. 2018). However, the Sixth Circuit has seemingly recently backtracked from this position. *Doe v. Oberlin Coll.*, 963 F.3d 580, 588–

omitted); *see also Bolden v. Lake Cty. Bd. of Educ.*, No. 119CV01262STAJAY, 2020 WL 1163938, at *2 (W.D. Tenn. Feb. 13, 2020), *report and recommendation adopted*, No. 119CV01262STAJAY, 2020 WL 1159760 (W.D. Tenn. Mar. 10, 2020); *Sam Han v. University of Dayton*, 541 F. App'x 622, 626–627 (6th Cir. 2013) (finding dismissal appropriate where "[the plaintiff] provide[d] no facts that would allow a court to infer that the adverse employment action at issue was a result of his race or gender" and instead, the complaint included only "conclusory allegations of discrimination" without "the 'sufficient factual matter' necessary to create an inference of discrimination" and noting that the court "is not required to accept the inferences drawn by [the plaintiff]").

Alternatively, although a plaintiff is not *required* to plead the *prima facie* case under *McDonnell Douglas*, if a plaintiff *does* adequately plead her *prima facie* case, then the plausibility requirement is satisfied. *Vandine v. Trinity Health Sys.*, No. 2:14-CV-1242, 2015 WL 5216715, at *4 (S.D. Ohio Sept. 8, 2015).

The Court also notes that the protected class of which Plaintiff is a member is the class of females. It is not the more specific (but still gender-related) class of married females, nor is it the non-gender-related class of spousal hires, because neither such class—each of which implicates marital status—is cognizable as a protected class for purposes of federal employment anti-discrimination statutes. *See e.g.*, *Sloan v. Tri-Cty. Elec. Membership Corp.*, No. M200001794COAR3CV, 2002 WL 192571, at *5 (Tenn. Ct. App. Feb. 7, 2002) (discussing spousal discrimination and noting that only three states "have statutes which specifically prohibit discrimination based on the identity of the spouse"). Other Courts considering spousal hire claims

---

89 (6th Cir. 2020) ("[T]his court has explicitly rejected the lower pleading standard that the majority now adopts.") (Gilman, J. dissenting).

have considered them to be claims on the basis of gender. *E.g.*, *Yan v. Bd. of Regents of Univ. of Wis. Sys.*, No. 05-C-16-C, 2005 WL 2206768, at *15 (W.D. Wis. Sept. 12, 2005); *Gad v. Kansas State Univ.*, No. CV 12-2375-EFM, 2016 WL 74399, at *9 (D. Kan. Jan. 6, 2016). That is not to say that Plaintiff disagrees with this; the Second Amended Complaint alleges discrimination based only on gender (*i.e.*, being of the female gender) and not on (female) gender combined with marital status or (female) gender combined with spousal-hire status. (Doc. No. 160 at ¶¶ 1, 2, 11, 15A, 31, 33, 34, 35, 38, 41, 43, 44, 47, and 50). But it nevertheless is a point worth stating explicitly: especially given what Plaintiff has alleged, the Court treats her protected class as the class of females. The fact that she was (allegedly and apparently undisputedly) a spousal hire, with the spouse being a male spouse in particular, may be relevant to other parts of the analysis but is not relevant to the specification of Plaintiff's protected class.

Applying the foregoing authority here, the Court finds that Plaintiff has failed to allege sufficient factual matter from which the Court could reasonably infer that Defendant discriminated against Plaintiff with respect to her employment because of her gender. *Keys*, 684 F.3d at 610. In the relevant portions of the Complaint, the only things Plaintiff has done are: (1) imply that there is a group of persons outside of her protected class that is similarly situated to her (*i.e.*, male spousal hires) (without explaining how they are similarly situated beyond being spousal hires), (2) allege that several different individual males spousal hires did better on tenure/promotion than she did (without alleging any specific factual matter regarding these male spousal hires that would have any bearing on their tenure or promotion); and (3) make a showing that statistically (based on a sample size of 16 individuals), males who are similarly situated (only in that they are spousal hires) as a whole tend to do better in receiving tenure as Vanderbilt professors. Such is not enough to allow the Court to reasonably infer gender discrimination under the above-described standard.

Plaintiff also alleges that in the same year that she submitted her application for promotion and tenure, a female colleague (who was not a spousal hire) also submitted such an application, which was approved by the university despite Plaintiff's application being allegedly stronger than this colleague's application. (Doc. No. 160 at ¶ 18). This allegation fails to support a plausible inference that Plaintiff was denied a promotion because of *her gender*; the only alleged difference between Plaintiff and this colleague appears to be that this colleague was not a spousal hire. Yet, as discussed above, the Court views the relevant protected class to females, not married females or spousal hires.[17]

In sum, the Court need not draw certain inferences simply because Plaintiff has done so. Here, Plaintiff alleges that because she was a female spousal hire and received recommendations for promotion and tenure, she is entitled to a reasonable inference that gender discrimination was the reason for her being denied a promotion and tenure. But the Complaint must do more than raise suspicion or create speculation—it must show entitlement to relief. *Twombly*, 550 U.S. at 553–54. Thus, while Plaintiff may be upset by the denial of tenure and promotion, the Complaint does not plausibly show that such denial was a result of discrimination based upon her gender. Plaintiff's gender discrimination claims will therefore be dismissed.

E. Retaliation

Plaintiff claims (in Counts I–IV) that Defendant retaliated against Plaintiff "because she opposed and complained about the gender discrimination directed at her by Defendant Vanderbilt's officers and agents." (Doc. No. 160 at 10). Plaintiff alleges that "members of Plaintiff

---

[17] Further, Plaintiff fails to plead any facts supporting her allegation that her own tenure-and-promotion file was stronger than that of her colleague, thus the Court is wary about accepting such an allegation as true given that it arguably is merely conclusory and not supported by factual matter as required to be accepted as true.

Lee's Department were angry with Plaintiff Lee because of her earlier Grievance which constituted protected activity" and that "[t]here was a causal connection between Plaintiff Lee's protected activity and Defendant Vanderbilt's denial of Plaintiff Lee's application for promotion and tenure from August 2017 to and including March 2019 and its interference with her research through additional Departmental assignments." (*Id*. at 11).

Via the Motion, Defendant argues that Plaintiff failed to state a plausible claim of retaliation because (according to Defendant), "Plaintiff failed to plead a causal connection between her alleged protected activity and the denial of her tenure application." (Doc. No. 36 at 14). What Defendant does not do is explain why—as Defendant unmistakably implies without expressly asserting—that a plaintiff must plead such causal connection in order to plausibly allege a claim of retaliation. The Court is loath to blindly accept Defendant's implication as valid, and thus it will assess the validly of such implication in some detail. Likely for a variety of different reasons the Court can envision, the question of whether a causal connection (by which the court means a causal connection between the alleged adverse employment action and the alleged protected conduct) must plausibly be pled by the plaintiff in order to survive a motion to dismiss a Title VII retaliation claim[18] has gone under-analyzed—and indeed generally unacknowledged—by courts. So the Court will do its own analysis, essentially from scratch, starting with two observations.

First, even though a plaintiff would need to plead a causal connection in order to plead an indirect-evidence *prima facie* case,[19] as discussed above a plaintiff does not *have* to plead an

---

[18] The Court sets aside for the moment what would be required to plausibly allege—*i.e.*, what kind of non-conclusory factual matter would have to be alleged—such causal connection if indeed a causal connection must be pled.

[19] To establish a *prima facie* claim of retaliation under Title VII and the THRA, a plaintiff must demonstrate that: 1) she engaged in a protected activity; 2) Defendant knew about the protected activity; 3) Defendant took an adverse employment action against Plaintiff; and 4) *there was a*

indirect-evidence *prima facie* case in order to adequately allege a claim of employment discrimination (or retaliation). As a reminder, this is essentially because a plaintiff may or may not have to resort to an indirect-evidence theory. A plaintiff "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2003). Thus, if there actually is a requirement to plausibly allege a causal connection, it does not derive from the fact that a causal connection is an element of an indirect-evidence *prima facie* case.

Second, absolutely none of the cases cited by Defendant in the applicable section of its Memorandum in Support of the Motion, (Doc. No. 36 at 13–17), support the notion that a plaintiff must plausibly allege a causal connection in order to adequately plead a claim of retaliation. By the undersigned's count, Defendant therein references ten cases (including the referenced cases cited by the cases Defendant primarily cites). Of those, only two involve motions to dismiss. The Court must reject one of them because it is based on the tacit assumption that a plaintiff must allege all elements of an indirect-evidence *prima facie* case—an assumption that is simply incorrect, as repeatedly noted above. *See* Doc No. 36 at 15 (quoting *Lucas v. KIK Custom Products*, No. 14-cv-03017-SHL-dkv, 2015 WL 3408750, at *2 (W.D. Tenn. May 27, 2015)). The other, *Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013), did not even involve a claim of retaliation and was cited by Defendant more generally to highlight the standard prescribed by *Twombly*. *See* Doc. No. 36 at 16. So neither of these cases addresses whether a retaliation claim must be dismissed if it does not plausibly allege a causal connection.

---

causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (emphasis added).

As for the other cited cases, two (*Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986), and *Langland v. Vanderbilt Univ.*, 589 F. Supp. 995 (M.D. Tenn. 1984) *aff'd*, No. 84-5478, 1985 WL 13611 (6th Cir. Aug. 19, 1985)) were decided after bench trials and have nothing to say about what must be alleged in order for a retaliation claim to be adequately stated. The remaining cited cases (*Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam), *Golden v. Metro. Gov't of Nashville & Davidson Cty.*, 263 F. Supp. 3d 684, 693 (M.D. Tenn. 2017), *Mmbaga v. Tenn. State Univ.*, No. 3:06-1073, 2007 WL 4146816, at \*11 (M.D. Tenn. Nov. 20, 2007), *Wilson v. Stroh, Co.*, 952 F.2d 942, 946 (6th Cir. 1992), *Russell v. Univ. of Texas of Permian Basin*, 234 Fed. Appx. 195, 202–203 (5th Cir. 2007), and *Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 717 F. App'x 577, 585 (6th Cir. 2017)), all involved motions for summary judgment and thus likewise have nothing to say about whether a retaliation claim requires a plausible allegation of a causal connection to survive a motion to dismiss. So Defendant's cited case law does not support its implication that the answer to that question is yes.

That is not to say, however, that the answer under the law is not yes. And the Court concludes, backing up a bit and drawing on more general (but applicable) principles, that the answer indeed is yes. A plaintiff asserting a retaliation claim does not have to adequately allege an indirect-evidence *prima facie* case of retaliation, but she does have to do *something* to survive a motion to dismiss. As indicated above, what she has to do is file a complaint containing sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. This means, as further noted above, that the complaint must contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct.

And this in turn means that the complaint must contain factual content that allows the court to draw the reasonable inference that there was a causal connection between the alleged protected conduct and the alleged adverse employment action. This is because if the court cannot draw the reasonable inference that there was a causal connection, the court cannot draw the reasonable inference that the defendant is liable for retaliation. It is not hard to see why. Recall that the cause of action here is one for retaliation based on engaging in conduct protected by Title VII, in violation of a particular section of the United States Code (namely, 42 U.S.C. § 2000e-3) included within Title VII. The applicable subsection of that section provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, *because* he has opposed any practice made an unlawful employment practice by this subchapter, *or because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added). In other words, a Title VII retaliation claim exists if (and only if) there is a violation of this subsection. And as this subsection makes clear, there is no such violation unless the plaintiff suffered an adverse employment action *because of* the plaintiff having engaged in what is commonly referred to as "protected conduct" (defined by this subsection as either "[having] opposed any practice made an unlawful employment practice by this subchapter, or . . . [having] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].") The applicable statute thus is clear: there is no violation of it, and thus no claim for retaliation, unless the adverse employment action is "because [of]" the protected conduct.

In other words, under the applicable statute creating a Title VII retaliation claim, such a claim clearly requires *causation* between the adverse employment action and the protected conduct. There are two different theories (an indirect-evidence theory and a direct-evidence theory) whereby a plaintiff can attempt to show such a statutory violation, but under either theory there is no statutory violation—and thus no valid claim for retaliation—unless such causation exists.

The causation that must be alleged could be—and herein sometimes is—referred to alternatively as a "causal connection," and the Court wishes to be clear: in stating above its conclusion that a plaintiff must plausibly allege a "causal connection," the Court merely means that a plaintiff must plausibly allege *causation* between the adverse employment action and the protected conduct. The Court does not mean to suggest that the causation that must be plausibly alleged is precisely the same as the "causal connection" required for an indirect-evidence *prima facie* case of retaliation. To the extent that the term "causal connection" carries a particular meaning in the context of a such theory, a plaintiff does not necessarily need to plausibly allege a "causal connection" in that particular sense; rather, at the relatively lenient and forgiving (for plaintiffs) motion-to-dismiss stage, a plaintiff need only adequately allege causation in a more general sense. The inquiry into the sufficiency of the complaint's allegations is flexible and practical: did the complaint plausibly allege *causation* between the protected activity and the adverse employment action?

For these reasons, the Court holds what Defendant unmistakably implied (but did not actually demonstrate itself): a plaintiff cannot survive a 12(b)(6) motion to dismiss a Title VII retaliation claim unless she has plausibly alleged the causation (*i.e.*, the "causal connection," using

the term without regard to any specific meaning it has in the context of an indirect-evidence *prima facie* case) just described. The question thus becomes whether Plaintiff has done so here.

At the risk of repeating itself, the Court notes that without alleging facts that reasonably raise a *plausible* inference of a causal connection between the alleged protected activity and the adverse employment action, the complaint will not survive a motion to dismiss. Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678. As stated (correctly, in the view of the undersigned) by one district court in this circuit, "to sufficiently allege a causal connection in the complaint, a plaintiff must plead factual content from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected conduct. *Downs v. United States Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *5 (W.D. Ky. Aug. 21, 2019) (citing *Keys*, 684 F.3d at 608; *Nguyen*, 229 F.3d at 563).

The parties appear to agree that the (only) relevant alleged protected activity for purposes of Plaintiff's retaliation claim took place when, allegedly, "[o]n or about July 13, 2016, Plaintiff filed a Grievance directed at Kevin Murphy, Chair of the Department of History of Art, Susan Wente, Provost and Vice Chancellor for Academic Affairs and Defendant Vanderbilt's PTRC." (Doc. No. 160 at ¶ 19). Defendant does not appear to dispute that the filing of this Grievance constitutes an adequate allegation of protected conduct. The Complaint states that the Grievance alleged that Defendant "discriminated against Plaintiff Lee by denying her application for tenure and a promotion which was recommended for approval by Dean Lauren Benton" and that Plaintiff "was a victim of discrimination directed at females whose male spouses were hired by Defendant Vanderbilt after which there was a pattern of denying female spousal hires tenure and promotion

while granting promotion and tenure to male spousal hires." (*Id.* at ¶ 20). Plaintiff claims that thereafter, her Department Chair, Kevin Murphy "berated" Plaintiff "because of the statements made in [the] Grievance," it was "clear from the conversation that Chairman Murphy was upset by the allegations made in [the] Grievance," and Murphy "assigned Plaintiff Lee additional Departmental duties to interfere with her research progress needed for her 2018 tenure and promotion application." (*Id.* at ¶ 24). In 2018, Plaintiff submitted a second application for tenure and promotion, which was denied. (*Id.* at ¶ 30).[20]

### 1. *Adverse employment actions*

The parties agree that Plaintiff's second denial of tenure and promotion constitutes an alleged adverse employment action. (Doc. No. 160 at ¶ 40; Doc. No. 36 at 14). Plaintiff also seems to suggest two additional adverse employment actions: 1) Plaintiff's department chair, Kevin Murphy, raising his voice "in a loud and accusatory tone" and "berat[ing]" Plaintiff in August 2017; and 2) Murphy's alleged "interference with her research through additional Departmental assignments" (which Plaintiff alleges were intentionally assigned "to interfere with her research progress needed for her 2018 tenure and promotion application.") (Doc. No. 160 at ¶¶ 24, 40; Doc. No. 51 at 7–8). Though Defendant does not address either of these alleged adverse employment actions, the Court finds that neither are cognizable as an adverse employment action.

First, an employee's department chair raising their voice or "berating" the employee is not an adverse employment action. Generally speaking, neither increased surveillance nor discipline,

---

[20] The Complaint also states that on or about May 9, 2019, Plaintiff filed a second Charge of Discrimination based on gender and retaliation with the EEOC and a second Grievance with Vanderbilt's Grievance Committee. (*Id.* at ¶ 32). Plaintiff does not allege any adverse actions that took place after May 9, 2019, however, and thus the Court concludes that this second Grievance is not also a relevant protected activity underlying Plaintiff's retaliation claims.

whether warranted or not, constitutes a material adverse change in the terms of employment in the discrimination context because those actions do not constitute a significant change in employment status as do things such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Rim v. Lab. Mgmt. Consultants, Inc.*, No. 3:18-cv-00911, 2019 WL 5898633, at *10 (M.D. Tenn. Nov. 12, 2019). Discipline can constitute an adverse employment action if it effects a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Williams v. AP Parts, Inc.,* 252 F. Supp. 2d 495, 498 (N.D. Ohio 2003). Plaintiff has not alleged any facts suggesting that Murphy raising his voice resulted in any materially adverse change in the terms and conditions of Plaintiff's employment. Notably, even if the Court did believe that the content of such an exchange conceivably could be so bad that it actually could have that effect, that would make no difference because Plaintiff does not even allege the substance of what Murphy said when he raised his voice with Plaintiff. Therefore, Plaintiff failed to plausibly allege an adverse employment action when she alleged that Murphy was upset with Plaintiff after Plaintiff filed the Grievance and that he raised his voice when speaking with Plaintiff.[21]

---

[21] Even if this occurrence were viewed as an adequately alleged adverse employment action, Plaintiff alleges no facts that suggest that the protected conduct (Plaintiff filing the Grievance) was the cause of Murphy "berating" Plaintiff. The Complaint merely (and in conclusory fashion) states that Murphy did so "because of the statements made in Plaintiff Lee's Grievance" and that "[i]t was clear from the conversation that Chairman Murphy was upset by the allegations made in Plaintiff Lee's Grievance." (Doc. No. 160 at ¶ 24). But without alleging any facts regarding the substance of what Murphy said, or regarding any other relevant context of this conversation, the Court cannot simply make such an inference. In this regard, it is worth noting that Murphy could have been upset "because of [particular] statements made in Plaintiff['s] Grievance" without being at all upset that Plaintiff filed and pursued a Grievance; it is one thing for a person to be upset about something specific that was stated by another person (perhaps, for example, because the first person believes that what was stated was a lie), but it is another to be upset because the second person ventured to make a statement or invoked a procedural mechanism wherein statements would be made.

Second, Murphy giving Plaintiff additional Departmental assignments is not an adverse employment action. The Sixth Circuit has never held that temporarily increasing an employee's workload is a materially adverse employment action. *Courts v. Correct Care Sols., LLC*, No. 3:17-cv-00944, 2019 WL 3425892, at \*5 (M.D. Tenn. July 30, 2019); *Kostic v. United Parcel Serv.*, Inc., 532 F. Supp. 3d 513, 535 (M.D. Tenn. 2021) ("[D]ifficult workloads are not adverse employment actions for purposes of Plaintiff's discrimination claims.") (Richardson, J.).[22]

Therefore, the Court views the only cognizable adverse employment action to be the denial of Plaintiff's second application for tenure and promotion.

### 2. *Causal link*

Plaintiff has not set forth any facts plausibly suggesting a causal link between the protected activity she engaged in (filing a Grievance with the university in July 2016) and her one cognizable adverse employment action (her tenure and promotion application being denied in March 2019).[23] Although it is true that under the pleading requirements of *Twombly* and *Iqbal*, Plaintiff need not develop her case completely at this stage in order to survive a motion to dismiss, Plaintiff needed

---

[22] Further, Plaintiff alleges no facts that would allow the Court to reasonably infer that Murphy's additional assignments were given with the purpose of interfering with Plaintiff's tenure application, or any facts explaining how such assignments in fact did interfere with Plaintiff's application—the allegation that Murphy was intentionally interfering with Plaintiff's tenure application is thus an entirely conclusory one.

[23] It is not clear based on the Complaint alone the precise date on which Plaintiff's second application for tenure and promotion was denied. The Complaint states only that Plaintiff submitted the second application "in 2018" and that she filed a Grievance regarding the denial of this application on or about March 21, 2019. (Doc. No. 160 at ¶¶ 30–31). (To be clear, this "second Grievance," is not alleged as protected conduct for purposes of Plaintiff's retaliation claims). Defendant asserts that March 21, 2019 is the date on which Plaintiff's second tenure and promotion application was denied (Doc. No. 36 at 15 (citing Doc. No. 160 at ¶ 30)), but this paragraph of the Complaint does not state this. But because Plaintiff's Response refers to the second denial of tenure as occurring in March 2019 (Doc. No. 51 at 8), the Court will accept as true that the second tenure application was denied in March 2019.

to provide a factual basis in the Complaint from which the Court could reasonably infer a causal connection between the protected activity and the adverse action—and Plaintiff has failed to do so.

Further, the nearly three-year period between the protected activity and the adverse action (without any additional factual matter in the Complaint supporting an inference of a causal connection, even when liberally construed in Plaintiff's favor) does not support a plausible connection between the two events. *See Altieri v. Albany Pub. Libr.*, 172 F. App'x 331, 333–34 (2d Cir. 2006) (finding that even under the Second Circuit's "lesser standard" (discussed above), that "where the complaint shows that the first alleged act of retaliation occurred twenty-one months after plaintiff's protected activity, and where nothing in plaintiff's pleadings, even liberally construed, suggest a plausible scenario of a causal connection between two events occurring so far apart, plaintiff's retaliation complaint must be dismissed.").

Plaintiff also tries to support a causal connection between the Grievance and the tenure denial by suggesting that Dean Geer, whom the parties agree was the primary decision-maker regarding the denial of Plaintiff's second tenure and promotion application, "was one of the votes in 2016 against granting Plaintiff Lee promotion and tenure." (Doc. No. 51 at 8). This was not alleged in the Complaint, however, and thus cannot be considered by the Court. The only alleged facts in the Complaint regarding Geer that conceivably could have some bearing on a causal connection are that: 1) Geer worked for Provost Wente when Plaintiff's first tenure application was denied and appealed to Provost Wente; and 2) Geer "had supervised Defendant Vanderbilt's PTRC in 2016 and had involvement in Plaintiff Lee's application for promotion and tenure for Provost Wente and knowledge of the false and fraudulent misrepresentations made to the Provost and to Defendant Vanderbilt's PTRC" (Doc. No. 160 at ¶ 26, 29). Neither of these facts raises a

reasonable inference that Geer was aware of the Grievance or that the Grievance somehow influenced Geer's decision to deny Plaintiff's second tenure and promotion application.

Therefore, because Plaintiff failed to allege factual matter that would allow the Court to reasonably infer a plausible causal connection between Plaintiff filing the Grievance in July 2016 and her tenure and promotion application being denied in March 2019, Plaintiff's retaliation claims will be dismissed.

F.  Breach of Contract

Defendant argues that "because Plaintiff's federal claims should be dismissed, the Court should not exercise supplemental jurisdiction over Plaintiff's breach of contract claims, if jurisdiction even exists." (Doc. No. 36 at 17). As discussed above, the Court finds that Plaintiff's federal claims (Counts I–IV) should be dismissed. It is thus appropriate for the Court to dismiss the remaining state law claims for breach of contract (Counts V and VI) for lack of jurisdiction. 28 U.S.C. § 1367(c)(3). The Sixth Circuit has explained:

> Under 28 U.S.C. § 1367, a district court has broad discretion to decide whether to exercise jurisdiction over state law claims. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir.1986) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)). "Generally, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130) (citations omitted).

*Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015); *see also Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir.2006) ("[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims."); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)( "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."); *Michigan Paralyzed Veterans of Am. v. Charter Twp. of*

*Oakland, Mich.*, No. 14-14601, 2015 WL 4078142, at *4 (E.D. Mich. July 2, 2015) ("[I]t is also within the Court's discretion to decline supplemental jurisdiction where appropriate under the provisions of 28 U.S.C. § 1367(c)[.]"); *Bohler v. City of Fairview, Tennessee*, No. 3:17-CV-1373, 2018 WL 3050347, at *15 (M.D. Tenn. June 19, 2018), amended sub nom. *Bohler v. City of Fairview*, No. 3:17-CV-1373, 2018 WL 5786234 (M.D. Tenn. Nov. 5, 2018).

The Court sees no extraordinary or compelling reasons to justify departing from the general rule that a federal court should not decide a plaintiff's state law claims where the underlying federal law claims have been dismissed. The Court thus declines to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claims, and these claims will be dismissed for lack of jurisdiction.

G. Sanctions

Plaintiff mentions at various points in her Response that Defendant should be subject to sanctions for 1) asking this court to reconsider the previous state court ruling, and 2) "numerous misrepresentations" in briefing. (Doc. No. 51 at 9).

However, passing references in Plaintiff's response are not the proper avenue of asking this Court for sanctions. Instead, Plaintiff should have filed a separate motion for sanctions. Additionally, as the Court has described herein, it was not improper for Defendant to file this Motion (as the Court has found that the law-of-the-case doctrine does not apply), and the Court does not see "numerous misrepresentations" in Defendant's briefing, certainly not to the point of indicating that sanctions would be warranted. In fact, as discussed above, Plaintiff is the one who has attempted to improperly rely on evidence and facts that are impermissible at this stage (because they were not contained in the Complaint).

Therefore, to the extent that Plaintiff is moving for sanctions, the Court will deny that request.

## CONCLUSION

For the reasons discussed herein, the Court will grant the Motion (Doc. No. 37) as supplemented (Doc. No. 107), and the Second Amended Complaint (Doc. No. 160) will be dismissed.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE