IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MIREILLE M. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:20-cv-00924 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| THE VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On June 22 of this year, a divided panel of the Sixth Circuit reversed this Court's grant of Defendant's motion to dismiss the operative complaint in this matter. (Doc. No. 301). In its concluding remarks, the majority wrote, "Given our decision to remand the matter for further proceedings on Lee's gender discrimination and retaliation claims under Title VII and the THRA, on remand, the district court must reconsider whether to exercise jurisdiction over the breach-of-contract claims." (*Id.* at 9).

Plaintiff thereafter[1] filed a pair of motions setting forth her view about whether the Court should exercise jurisdiction over the remaining breach-of-contract claims (meaning Counts 5 and 6 of the Second Amended Complaint (Doc. No. 104, "SAC")).[2] Each of these motions suggested that she no longer wished for the Court to exercise jurisdiction over these claims. The first was "Plaintiff Lee's Motion for an Order Abstaining from Re-exercising Supplemental Jurisdiction

---

[1] Plaintiff alone had filed five motions (and provided notice of reinstatement of a sixth) prior to filing the pair of motions discussed here in late July and early August.

[2] Count VII of the SAC, which was also a breach-of-contract claim, previously had been dismissed with the parties' mutual consent. (Doc. No. 164). Alas, this appears to be one of the few things on which the parties have been able to avoid sharp disagreement.

Over Plaintiff's Contract Claims Now Pending in State Court" (Doc. No. 329, "Motion to Abstain"), which was supported by an accompanying memorandum (Doc. No. 330). The second was "Plaintiff Lee's Motion Pursuant to Rule 12(f) F.R.CIV.P. to Strike or in the Alternative to Amend Pursuant to Rule 15(a) F.R.CIV.P." (Doc. No. 332, "Motion to Strike"), which also was supported by an accompanying memorandum (Doc. No. 333). Defendant filed respective responses to these motions. (Doc. Nos. 343, 344). Plaintiff then filed respective replies to Defendant's responses. (Doc. Nos. 346, 349). The briefing on both motions concluded on August 19, 2023.

The Court is unsure what Plaintiff thinks is the maximum amount of time a district court is properly allotted to handle these sorts of motions, considering that the Court has more than 500 other cases and the fact that the undersigned has in the meantime issued multiple non-cursory orders on this case. (Doc. Nos. 324, 325, 331). And the Court likewise is unsure why Plaintiff did not file a motion to ascertain status on the pending motions. But the Court is sure both that the Sixth Circuit should be spared spending its valuable time on Plaintiff's now-pending petition for mandamus if possible and that the pending motions raise live and material issues, and so the Court will address these motions at this time.

The Court will first resolve the Motion to Abstain. As discussed below, the resolution of the Motion to Abstain makes resolution of the Motion to Strike very straightforward.

Procedural Background

In its response to the Motion to Abstain, Defendant (referred to below as "Vanderbilt") provides a summary of the relevant procedural background, which the Court accepts as accurate and quotes here in pertinent part:

> On April 12, 2022, the Court granted Vanderbilt's motion to dismiss the complaint in this action pursuant to Rule 12(b)(6), determining that Plaintiff had

failed to adequately plead claims of federal law discrimination or retaliation and declining to exercise supplemental jurisdiction over Plaintiff's remaining state law breach-of-contract claims. On June 28, 2022, Plaintiff appealed the dismissal of her complaint to the United States Court of Appeals for the Sixth Circuit.

On May 3, 2022, Plaintiff filed a new lawsuit against Vanderbilt in the Chancery Court of Davidson County, Tennessee, alleging gender discrimination, retaliation, and breach of contract. Plaintiff then filed a first amended complaint on July 11, 2022. On September 12, 2022, Vanderbilt moved to dismiss the complaint or for a more definite statement as to Plaintiff's claim of breach of contract. On November 29, 2022, the state court granted Vanderbilt's motion to dismiss as to Plaintiff's claims of gender discrimination and retaliation because a plaintiff is barred from maintaining concurrent causes of action in both state and federal court based on a common nucleus of operative facts. The state court also denied Vanderbilt's motion to dismiss Plaintiff's breach-of-contract claim but granted Vanderbilt's alternative motion for a more definite statement regarding that claim.
. . .

On or about December 6, 2022, Plaintiff filed an amended complaint. Concurrently with the amended complaint, Plaintiff filed a document titled, "More Definite Statement in Support of her Amended Complaint Pursuant to Court's Order." Vanderbilt moved to strike the amended complaint and "More Definite Statement." On February 2, 2023, the state court granted that motion pursuant to Rule 12.05 of the Tennessee Rules of Civil Procedure and directed Plaintiff "to provide a more definite statement of her Count III breach of contract claim, through a unitary amended pleading . . ." On or about March 3, 2023, Plaintiff filed a "Revised Amended Complaint Pursuant to Order Arising from January 20, 2023 Hearing," which is the operative complaint in the state court action. The parties have filed cross-motions for summary judgment in the state court action, but the state court has not issued any decision as to those motions. On June 22, 2023, the appellate court vacated this Court's order dismissing the complaint and remanded for further proceedings, including this Court's determination as to whether it would exercise jurisdiction over Plaintiff's state law breach-of-contract claims. On June 30, 2023, the Chancery Court issued an order staying the case pending this Court's reconsideration of whether to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim on the ground that the claim was first brought in this Court.

(Doc. No. 343 at 2-3) (citations omitted). (Below, the Court refers to the two state-law contract claims (Counts V and VI of the Second Amended Complaint) as the "State-Law Claims").[3]

I.      **MOTION TO ABSTAIN**

        A.  APPLICABLE LEGAL PRINCIPLES

The statute relevant here provides in pertinent part:

(a)      Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

   (1) the claim raises a novel or complex issue of State law,

   (2) the claim substantially predominates over the claim or claims over which the  district court has original jurisdiction,

   (3) the district court has dismissed all claims over which it has original jurisdiction, or

   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[3] The Court will use this term also to describe the breach-of-claims *as filed in state court*, even though it understands that the allegations supporting those claims are "far more detailed" than the claims as filed in federal court. (Doc. No. 330 at 2).  This is appropriate because whatever the difference in detail in their supporting allegations, the claims undisputedly are in essence the same.

28 U.S.C. § 1367(a)-(c).[4] As noted below, it appears undisputed that this Court would in its sound

discretion be authorized to exercise supplemental jurisdiction under Section 1367(a). But as the

Supreme Court has noted (in part by quoting subsection (c) as just quoted above):

> Of course, to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction *must* be exercised in all cases. Our decisions have established that pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right," [*Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966)] and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons. *See also* [*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)] ("As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values"). Accordingly, we have indicated that "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.,* at 357, 108 S. Ct., at 623.

> *The supplemental jurisdiction statute codifies these principles*. After establishing that supplemental jurisdiction encompasses "other claims" in the same case or controversy as a claim within the district courts' original jurisdiction, § 1367(a), the statute confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise:

> [quoting 28 U.S.C. 1367(c)]

> Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may

---

[4] Defendant is correct to note that "Plaintiff's Motion [to Abstain and the brief in support of that motion] fails to acknowledge, or even address, the standard set forth in 28 U.S.C. § 1367." (Doc. No. 343 at 4). In both the memorandum and the reply in support of the Motion to Abstain, Plaintiff does not even cite, let alone purport to apply, Section 1367(c). This was a significant shortcoming on Plaintiff's part. The Court, though, does not have the luxury of skipping over such tasks, and so it will perform them here even though Plaintiff failed to do so. It is the Court's job here to determine whether to exercise supplemental jurisdiction, and doing this properly requires an identification and application of the particular applicable legal standards. The need to be conscientious in addressing such things in connection with a party's motion that implicates the exercise of jurisdiction (even, when, as here, the party did not do so)—and likewise conscientious in the many other matters before it—may help explain why the Court is unable to handle motions as quickly as Plaintiff apparently thinks it should.

> decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Cohill, supra,* at 350, 108 S. Ct., at 619.

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (some citations omitted) (second emphasis added).[5] Notably, in making this kind of decision, the district court enjoys "broad discretion" in this regard. *See Phaneuf v. Collins*, 509 Fed. App'x. 427, 434 (6th Cir. 2012) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

The Court also notes its view that the Supreme Court's reference to the principles codified in "[t]he supplemental jurisdiction statute [28 U.S.C. § 1367]"—meaning the principles of *Gibbs* that in deciding whether to exercise supplemental jurisdiction, the court is afforded flexibility "to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values," 522 U.S. at 172 (quoting *Cohill*, 484 U.S. at 350)—is most implicated by 28 U.S.C. 1367(c)(4) in particular. In other words, of the four circumstances under which the court may decline to exercise supplemental jurisdiction, three of them actually implicate a fairly narrow set of concerns, but the fourth ("exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction") affords the Court flexibility to decide in its sound discretion whether declining jurisdiction would sensibly accommodate a "range of concerns and values." Those "concerns" include "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, the relationship between the state and federal

---

[5] The kind of claims to which a federal court can exercise jurisdiction only as "supplemental jurisdiction" under 28 U.S.C. § 1367 traditionally have been called "pendent claims." *City of Chicago* essentially defines them as "'other claims' in the same case or controversy as a claim within the district courts' original [subject-matter] jurisdiction." So "pendent" claims are claims not within the Court's original jurisdiction (typically, state-law claims brought, in a case where diversity jurisdiction is lacking, together with claims that are within the court's federal-question jurisdiction) but are at least potentially within the court's supplemental jurisdiction under Section 1367.

claims," and the "values" include "judicial economy, convenience, fairness, and comity." *Id*. at

573 (internal quotation marks and citations omitted).

## B. ANALYSIS

Plaintiff does not deny that this Court in its discretion *could* exercise supplemental

jurisdiction over her remaining contract claims under 28 U.S.C. § 1367(a). Indeed, if she were to

contend otherwise, that would represent a stark change of position since, in asserting those claims

in this Court in the first place, Plaintiff asserted that this Court could exercise such jurisdiction.

Instead, in her brief in support of the Motion to Abstain, Plaintiff asserts that the Court *should* not

exercise supplemental jurisdiction.[6] The Court must consider this assertion because even if the

"the [Court] . . . . ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

§ 1367(a), the [C]ourt has discretion to decline to exercise its supplemental jurisdiction . . . ."

*Cirasuola v. Westrin*, No. 96–1360, 1997 WL 472176, at *1 (6th Cir. Aug. 18, 1997).

In making this assertion, Plaintiff relies on the Court's original reasons for declining

supplemental jurisdiction as stated in its since-vacated order dismissing all of Plaintiff's claims.[7]

---

[6] At times, Plaintiff uses the term "abstaining from" exercising jurisdiction. But for a federal court, "abstaining from" is in some jurisdictional contexts a term of art, one that implicates various so-called "abstention doctrines" whereby a Court might decline jurisdiction, generally in situations that do not even involve supplemental jurisdiction under Section 1367. The Court emphasizes that although these doctrines can support the Court declining to exercise jurisdiction over pendent claims, they generally are not relevant to the decision whether to decline supplemental jurisdiction *under Section 1367(c)* in particular. *See City of Chicago*, 522 U.S. at 174 (1997) ("In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies."). Plaintiff does not argue, and the Court does not perceive, that any abstention doctrine is implicated in this case. So, whatever terminology Plaintiff chose to use in this regard, the Court deems its decision to be whether to *decline* to exercise supplemental jurisdiction under Section 1367(d).

[7] Except to the extent that the Court's decision in that order was based on the notion (discussed herein) that it is within the Court's discretion to decline supplemental jurisdiction over pendent claims where appropriate under 28 U.S.C. § 1367(c), the Court's reasons for declining jurisdiction as identified in that order are not relevant here, because they were premised on that fact that there were (then) no other claims remaining in this Court—a circumstance that obviously no longer pertains in this case.

Plaintiff here additionally relies on the fact that the state court chancellor has supervised the litigation of the State-Law Claims and has "heard arguments" on the parties' cross-motions for summary judgment,[8] which (according to Plaintiff) indicates that judicial economy is best served by keeping those claims in state court;[9] Plaintiff also relies on the assertion that the chancellor is better-situated to resolve state-law (contract) issues. (Doc. No. 330 at 2-3). She also argues, relatedly, that considerations of comity support this Court deferring to the state court. And in her reply, she writes, "The fact that these claims are in State Court with much more detailed allegations [than the allegations made in support of the State-Law Claims in the SAC] are the result of this Court's decision to decline supplemental jurisdiction and dismiss the contract claims without prejudice, not any manipulation of the forum by Plaintiff or her counsel." (Doc. No. 346 at 2).

Plaintiff also claims that this Court's exercise of supplemental jurisdiction would raise "serious statute of limitations issues." (Doc. No. 330 at 3). In response, Defendant correctly notes that Plaintiff "fails to specify the nature of that issue," and also that it "is not aware of any such issue that will require adjudication." (Doc. No. 343 at 10). The Court likewise is unsure what the specific issue(s) might be. Plaintiff does provide a vague description of the nature of the concern, writing: "However, because the statute of limitations in Tennessee for contract actions is six years

---

[8] Plaintiff also relies on the (unsupported) assertion that the chancellor has "considered briefs" on the cross motion for summary judgment. (Doc. No. 330 at 2-3). Defendants disputes that there is any support for the notion that the chancellor has specifically considered the briefs (as opposed to hearing oral argument without yet considering the briefs. (Doc. No. 343 at 9). Plaintiff provides no support for this particular assertion, and so the Court disregards it.

[9] Both parties appear to assume that to say that this Court will assert jurisdiction of the State-Law Claims is to say that they will be litigated exclusively in federal—i.e., that in that case the state court would dismiss the State-Law Claims, rather than seeking for some reason to maintain the state-court litigation of those claims concurrently with this Court's litigation of those claims. They likewise assume that if this Court declines to assert jurisdiction over the State-Law Claims, then the state court will adjudicate those claims just like it would adjudicate any other claims, as if those claims never had been filed in federal court. These assumptions actually are not self-evidently true, but they nevertheless strike the Court as very sound, and the Court will proceed under such assumptions.

and the time periods provided for in 28 U.S.C. 1367(d) have expired, a new claim in this Court may no longer be timely and thus subject to dismissal on statute of limitations grounds." (Doc. No. 330 at 2). It seems that Plaintiff thinks that if the Court were now to assert jurisdiction over the State-Law Claims, they would constitute new claims and thus would be subject to a potential limitations defense, rather than being considered the same claims that were timely when filed in this Court originally. The Court is inclined to think otherwise, and for this reason (and also because Plaintiff can and does prevail on the Motion to Abstain even absent consideration of this concern) it will disregard this concern in its analysis.

In opposition to the Motion to Abstain, Defendant asserts that there exists here none of the four circumstances prescribed by Section 1367(c) for declining jurisdiction. As to the first three (those set forth in Section 1367(c)(1)), the Court agrees; Plaintiff (not having discussed Section 1367(c) at all) certainly does not assert that one or more of them is present here, and the Court does not perceive any reason why any of them would be.

The fourth, however, is a different matter. Plaintiff, not having said anything at all about Section 1367(c), certainly does not specifically invoke Section 1367(c)(4). But she does raise "a range of concerns and values," thus making her request for declination of jurisdiction at least cognizable under that paragraph even though Plaintiff failed to point the Court to that paragraph as he should have.

Though cognizable under Section 1367(c)(4), the request is not necessarily properly granted under Section 1367(c)(4). That is, it is properly granted if and only if the Court finds "exceptional circumstances" presenting "compelling reasons" for declining jurisdiction. Defendant asserts that "Plaintiff has suggested no exceptional circumstances or compelling reasons, and there are none." (Doc. No. 343 at 7). The Court disagrees. In the Court's view there

are circumstances in this case that are exceptional—meaning (a) unusual, as indicated by their being absent from all of the cases concerning Section 1367(c) the Court was able to review after considerable searching and from all of the cases cited by Defendant as far as the Defendant indicates; and (b) of particular significance to one or more of the relevant concerns and values. Specifically, the circumstances are that: (a) the plaintiff suffered entry of an order whereby the district court dismissed all of the plaintiff's federal law claims and also declined to exercise jurisdiction over the pendent claims; (b) the plaintiff appealed the order insofar as it served to dismiss the federal claims but not insofar as it served to decline jurisdiction over the pendent claims; (c) the plaintiff, having effectively been told (in a still-valid, albeit challenged, order) to take the pendent claims to state court, did exactly that; (d) the parties litigated the case substantially in state court, to the point of fully briefing cross-motions for summary judgment; (e) those cross-motions remained pending in state court; (f) the district court's order was reversed insofar as it dismissed the federal claims; and (g) the plaintiff indicated that, having (understandably enough) started and gone far down the path of state-court litigation, she wished to continue to the end of that path.

These circumstances, in addition to being very rare (if not unique) as far as the Court can tell, are of special significance because they indicate that (a) the plaintiff (here, Plaintiff, obviously) did exactly what was contemplated by the district court order, at a time when the order was still valid and (if Defendant were to have its way) would forever remain valid, that is, choosing a state-court forum for the pendent claims; (b) Plaintiff's preference of forum remains state court; and (c) and there were obviously colorable, legitimate reasons for that current preference.

These circumstances establish the exceptionable circumstances to invoke Section 1367(c). In the Court's view, though, the question of whether Section 1367(c)—though properly invoked—

actually and ultimately justifies declination of supplemental jurisdiction turns on a different question. The question is whether, given the applicable circumstances, there are "compelling reasons" dictating declination. The Court perceives that there are. In the Court's (necessarily subjective) view, the "concerns and values" favoring declination "compelling[ly]" outweigh the "concerns and values" against declination, i.e., in favor of exercising jurisdiction. To an extent, the Court's discussion above has indicated concerns and values that support declination. To that, the Court adds the observations in the following two paragraphs.

Although the Court will not hesitate to decide pendent claims where it concludes that so doing is warranted, there is something to be said for the view that "federal courts should strive to avoid deciding issues of state law when, as here, it is possible to do so." *Armijo v. New Mexico*, No. CIV 08-0336 JB/ACT, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009). This is true even when, as apparently is true here, none of the state-law issues are "complex" or "novel" so as to implicate Section 1367(c)(1). Likewise, there is much to be said for the view that when the plaintiff "has stated that she prefers to litigate her state law claims in state court, [then] to the extent possible, the plaintiff should be the master of her choice of forum" and thus be permitted to litigate in state court, her choice of forum. *Diaz v. City of Tucumcari*, No. CIV 11-0090 JB/CG, 2011 WL 6830410, at *26 (D.N.M. Dec. 19, 2011). *See also Centeno v. City of Fresno*, No. 1:16-cv-00653-DAD-SAB, 2019 WL 991049, at *4 (E.D. Cal. Feb. 28, 2019) ("Here, the court concludes that the exercise of supplemental jurisdiction is not warranted in this case. Plaintiffs, who originally filed this action in state court, are entitled to some degree of deference regarding their choice of forum."); *Dayton v. Alaska*, No. 3:12-cv-00245 JWS, 2013 WL 3712408, at *4 (D. Alaska July 12, 2013) ("respect for Plaintiff's original choice of forum weigh[s] heavily against keeping this case in federal court"), *rev'd on other grounds,* 584 F. App'x 699 (9th Cir. 2014); *Abels v. GE*

*Homeland Prot. Inc.*, No. C-11-5313-YGR, 2012 WL 1196148, at *1 (N.D. Cal. Apr. 10, 2012) ("The Court will respect Plaintiff's choice of forum to adjudicate these state law issues and will decline to exercise supplemental jurisdiction over her state law claims."); *City of Jay v. R.J. Transportation, Inc.*, No. 05-CV-668-TCK-SAJ, 2006 WL 8457207, at *1 (N.D. Okla. Feb. 21, 2006) ( "Due to the early stages of litigation and the Plaintiff's choice of forum, which is entitled to great weight, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.");[10] *Hornstein v. Miami-Dade Cnty.*, No. 0521521CIV-HUCK, 2005 WL 3890636, at *4 (S.D. Fla. Sept. 9, 2005) ("This case was originally filed in state court, the Plaintiffs' choice of forum. Pursuant to 28 U.S.C. § 1367(c)(3), the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims.").[11]

Each of the two referenced possibilities—allowing a state court to decide state law and deferring to Plaintiff's choice of forum—exist here and can be realized by the Court declining to exercise supplemental jurisdiction. And this is compelling because (all other things being equal) these possibilities are worth realizing.

Arguing otherwise, Defendant cites a variety of concerns. First, it asserts judicial economy, convenience,[12] and fairness. It argues that if the State-Law Claims are allowed to proceed in state

---

[10] To the extent that Plaintiff's pendent claims (the State-Law Claims) are not in "the early stages of litigation" in state court, as they were in *City of Jay*, that might actually make declination of supplemental jurisdiction even more appropriate than if they were in the early stages of litigation in state court.

[11] The Court is aware that these case neither are binding on this court nor were decided under procedural circumstances similar to those here at issue. Nevertheless, the Court finds them both persuasive and applicable for the particular limited proposition for which the Court cites them. Additionally, the Court notes that it believes that since Plaintiff's pendent claims had been dismissed by this Court at the time he filed them in state court, it is appropriate in this context to think of state court as the "original" choice of forum for the pendent claims—even though, long prior to such dismissal she had chosen to file them in federal court.

[12] In this case, the Court does not see any meaningful distinction between concerns of "efficiency" and concerns of "convenience."

court, "the parties would present largely the same witnesses and evidence in two different courts such that two different fact-finders could reach differing conclusions about Vanderbilt's liability with respect to the same underlying events[, a potential] outcome [that] presents a risk of conflicting decisions and significant duplication of effort on the part of the courts, the parties, and the witnesses." (Doc. No. 343 at 8). These are legitimate concerns, but at this point it is sheer speculation that they will ultimately be born out, and the speculative nature of these concerns substantially undermines their weight. The Court does not know that there would be any inconsistencies between what it decides and what the state court decides when adjudicating what are different (though to an extent related) claims. The Court also does not know whether there would be any duplication of effort stemming from claims pending in two different courts. If the state court were to grant summary judgment to Defendant based on Defendant's pending motion (as Defendant itself must view as likely, if they deem their motion meritorious, which surely they do), there may be little to no duplication. To the contrary, there may be some effort saved by not teeing up summary judgment motions a second time in this Court.[13]

An additional point must be made here about efficiency. Given the unusual and often unsatisfying (surely to all concerned) course of proceedings in this case, which has been marked by an unusual amount of what the Court will delicately call "sparring," it is fair to say that "efficiency" in this case has been very elusive, despite the best efforts of this Court (meaning both the undersigned district judge and the assigned magistrate judge). To put the matter frankly, at this stage, one would be unwise to bet on the "efficiency" of the progress of this case in this Court.

---

[13] Defendant has not yet herein moved for summary judgment. But Plaintiff has, twice. Specifically, Plaintiff first filed a motion for partial summary judgment (Doc. No. 173), which was stricken by Court order (Doc. No. 225) upon motion of Plaintiff (Doc. No. 216). Then, prior to the entry of the Court's April 12, 2022 order dismissing the SAC (Doc. No. 245), Plaintiff filed another motion for summary judgment (this one as to all claims) (Doc. No. 238), which was denied as moot in that order.

While committing to continuing to do everything he can within his control to promote efficiency, the undersigned is loath to prognosticate that more efficiency will ensue if the State-Law Claims proceed in this Court rather than state court.[14]

Defendant next argues that "[c]onsiderations of comity do not alter the conclusion that the Court should exercise jurisdiction over the Contract Claims." (Doc. No. 343 at 9). Defendant relies on the fact that the state court has stayed consideration of the cross-motions for summary judgment, thus indicating that it is content to defer to this Court's jurisdiction. This is a point well-taken. But the second (alleged) fact on which Defendant relies is less well taken, because the Court cannot assess its validity. Specifically, Defendant asserts that the State-Law Claims "will primarily require a straightforward application of basic contract principles, such as whether Vanderbilt's conduct with respect to Plaintiff's applications for promotion and tenure and grievances was consistent with Vanderbilt's own policies and procedures. Plaintiff does not suggest, and the Complaint does not indicate, that this Court should expect to address any Tennessee state statute or unfamiliar issue." (*Id.* at 10). The Court does not deny that Plaintiff has not, including in her reply in support of the Motion to Abstain, indicated any nuanced contract issues implicated by the State-Law Claims; to this extent, Defendant gains traction. But the traction is undercut to a large extent by Defendant's own qualification that the State-Law Claims will *primarily* involve a straightforward application of basic contract principles; the Court ventures to say that even in the

---

[14] For the most part, the Court agrees with Defendant that Plaintiff does not garner "efficiency" points on the ground that it is efficient for the state-court judge to rule on the cross-motions for summary judgment due to that judge's familiarity with the motions (Doc. No. 343 at 9); the Court cannot say that the judge has invested any effort yet to gain such familiarity beyond the investment of time in holding oral argument (which the judge could have held without any substantive reading of the briefs). Moreover, all indications are that the judge has declined to make any further investment until this Court makes a decision whether to exercise supplementary jurisdiction. In short, efficiency tends to be enhanced at least to some extent by having a motion decided by a judge that already has heard oral argument on the motion, but in this case the Court cannot conclude that the enhancement is very substantial.

case where novel and tortuous contract issues are involved, it could still be fairly said that the case "primarily" involved basic contract principles, inasmuch as "basic contract principles" tend to govern the "primary" part of a contract-law analysis even if much less "basic" inquiries necessarily follow.

Ultimately, the Court finds that comity would not be disserved by its exercising jurisdiction over the State-Law Claims. On the other hand, comity would not be affirmatively served by the Court exercising such jurisdiction.

Finally, Defendant expresses concerns that leaving the State-Law Claims in state court would serve to reward Plaintiff for what Plaintiff views as "forum manipulation" (forum shopping). (Doc. No. 343 at 10-12).

> At page 10 of its Response Vanderbilt references a claim that Plaintiff has somehow attempted to manipulate the forum. Had the Court of Appeals affirmed this Court, only the contract claims would remain and those claims would be in State Court. The fact that these claims are in State Court with much more detailed allegations are the result of this Court's decision to decline supplemental jurisdiction and dismiss the contract claims without prejudice, not any manipulation of the forum by Plaintiff or her counsel.

(Doc. No. 346 at 2). The Court will assume arguendo here that "forum shopping" is an odious practice that cuts against Plaintiff's choice of forum (and not, for example, a defensible practice for counsel who naturally seek the best outcome for their clients). But the Court nevertheless agrees with Plaintiff that the record suggests no "forum shopping." To be clear, the Court is not naïve; there is a clear record of Plaintiff's counsel being, to put the matter delicately again, unhappy with the undersigned district judge, and the undersigned would hardly be shocked if Plaintiff's counsel consciously sought to have the State-Law Claims adjudicated by some judge—any judge—other

than the undersigned.[15] The problem is that Plaintiff's filing of the State-Law Claims in state court is entirely consistent with the Court's order that declined jurisdiction over such claims. (Doc. No. 245). Once the Court declined such jurisdiction, it is only natural that Plaintiff's counsel would take such claims to a forum that did have jurisdiction: state court. The Court is disinclined to say that a plaintiff, to whom it has represented that it essentially is leaving particular claims for state court, (a) has engaged in nefarious forum manipulation if the plaintiff files those claims in state court; or (b) must wait to file those claims in state court until an appeal has concluded with respect to all of plaintiff's other claims that were filed in this Court, on the chance (which statistically tends not to be a particularly high chance) that after conclusion of the appeal the decision to leave the claims for state court will be changed. The Court does not see a legal basis for taking this tack and, particularly absent a solid legal basis for doing so, perceives this tack as unfair.[16]

Beyond the above-referenced weaknesses, Defendant's argument is reasonable enough as far as it goes. But the argument (in addition to being undermined to an extent by those weaknesses) does not go far enough, in that it does not address the unique procedural circumstances here at issue and likewise does not cite any case law concerning comparable circumstances.

Ultimately, the Court finds in is discretion that the reasons for declining jurisdiction significantly outweigh the interests in exercising jurisdiction, and so under Section 1367(c)(4), the Court will decline supplemental jurisdiction over the State-Law Claims. This is a subjective, discretionary call, and some judges come out differently. But the Court must call it like it sees it,

---

[15] And the reader is unlikely to be shocked that the undersigned asserts that such an outcome is entirely and totally unnecessary for Plaintiff to get an entirely fair shake and more than adequate attention to her case.

[16] To be clear, under different circumstances, the Court might not countenance attempts to move state-law claims from federal court to state court—not least where, as here, the plaintiff's counsel has indicated considerable dissatisfaction with the assigned undersigned judge (without affecting the undersigned's impartiality). But the instant case involves its own (unique) circumstances, and Defendant does not truly address them.

and it has done so for all of the reasons discussed above—most notably the facts that Plaintiff was in effect told that she should take these claims to state court and now, having done so, prefers to keep them in state court, and the Court's conclusion that (unlike in some cases) the Court cannot say with any confidence that in *this case* efficiency would be enhanced by combining all claims in federal court.

Accordingly, the Motion to Abstain (Doc. No. 329) will be granted.

## II.    MOTION TO STRIKE

Defendant accurately summarizes the law regarding motions to strike:

> Rule 12(f) of the Federal Rules of Civil Procedure ("Rule 12(f)") allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." An allegation is "impertinent" or "immaterial" when it is "not relevant to the issues involved in the action." "[']Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."

> Motions under Rule 12(f) "are viewed with disfavor and are not frequently granted." The Sixth Circuit has found that a motion to strike "should be granted only when the pleading to be striken [sic] has no possible relation to the controversy." District courts have "ample discretion to strike filings under Rule 12(f), and their decisions are reviewed only for abuse of that discretion."

(Doc. No. 344 at 4-5) (citations omitted). On a motion to strike, the burden rests with the movant to demonstrate that the challenged matter should be stricken. *See, e.g.*, *Pandora Distribution, LLC v. Ottawa OH, LLC*, No. 3:12-CV-2858, 2018 WL 972457, at *2 (N.D. Ohio Feb. 20, 2018).

In the Motion to Strike, Plaintiff asks this Court to strike "the breach of contract claims in Counts 5 and 6 of the [SAC]," i.e., the State-Law Claims. (Doc. No. 332 at 1). In so doing, she appears to ask for the striking of all language in those counts, some of which goes beyond merely stating that Plaintiff is asserting a breach-of-contract claim and makes factual allegations.

Conceivably, the language to be stricken could be relevant to the other counts in the SAC (and not duplicated elsewhere in the SAC); in this sense, arguably such language could remain pertinent to Plaintiffs' claims even if the breach-of-contract claims with which it is included is appropriately stricken. But Defendant, in opposing the Motion to Strike, does not contend that at least *some particular language* from those counts would remain pertinent (and thus should not be stricken) even if the *claims* presented in those counts are to be stricken.[17] Instead, Defendant takes an all-or-nothing approach; Defendant implies that the sole question here is whether Counts V and VI *in their entirety* should be stricken, and that there is no need to consider the potential alternative of keeping at least *some language* from those counts in the event that the *claims* stated in those counts are stricken. The Court will view the issue likewise. Defendant urges the Court to answer that question in the negative, contending (as discussed above) that the State-Law Claims should be adjudicated by this Court and thus are not "impertinent" or "immaterial" for purposes of Rule 12(f).

Given that the State-Law Claims will not proceed in this Court, it may come as no surprise that the Court finds that Count V and VI are "impertinent" and "immaterial" (terms that apparently are synonymous for purpose of Rule 12(f)).[18] Simply put, the counts are not material to this federal court action going forward, because the claims they present (the State-Law Claims) are no longer part of this action at all and thus are not relevant to the issues involved in the action. That is not to say that issues relevant to the State-Law Claims are not mirrored in the counts that will proceed in

---

[17] This comes as no surprise; it is hard to see how Defendant would benefit from leaving in some of Plaintiff's factual allegations while the rest of the language in the counts, and the claims they present, are stricken.

[18] Indeed, one suspects that Defendant would prefer that these Counts, with their included factual allegations, be stricken if, contrary to Defendant's wishes, the Court will not exercise supplemental jurisdiction over the State-Law Claims (as has proven to be the case).

this action, but as indicated in a footnote above, the question here is whether the *two counts* (meaning the claims that they respectively present and all of the language included in the counts ostensibly to support the claim) are relevant to the issues remaining in this action based on the pendency of the other counts. And that question must be answered in the negative. Accordingly, the Motion to Strike will be granted on the grounds that Counts V and VI are impertinent and immaterial.[19]

CONCLUSION

For the reasons set forth above, both the Motion to Abstain (Doc. No. 329) and the Motion to Strike (Doc. No. 332) will be granted, and the Court will decline to exercise jurisdiction over Counts V and VI and thus will strike them from the SAC.

The Court suggests that Plaintiff's counsel notify the Sixth Circuit of this decision.

An appropriate corresponding order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[19] The Court need not address Plaintiff's alternative request to amend the SAC to drop Counts V and VI.